UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

HEATHER RENEE THEIS

          **Plaintiff,**                         **Case No. 2:20-cv-3929**
                                         **JUDGE EDMUND A. SARGUS, JR.**
      **v.**                             **Magistrate Judge Norah McCann King**

KILOLO KIJAKAZI,[1]
**Acting Commissioner of Social Security,**

          **Defendant.**

REPORT AND RECOMMENDATION

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the Commissioner's denial of Plaintiff's applications for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. For the reasons that follow, the Undersigned recommends that the Commissioner's decision be affirmed.

PROCEDURAL HISTORY

Plaintiff filed her applications for benefits on September 16, 2016, alleging that she has been disabled since March 31, 2013. R. 239–252. The applications were denied initially and on reconsideration, and Plaintiff requested a *de novo* hearing before an Administrative Law Judge ("ALJ"). On April 5, 2019, Plaintiff, who was represented by counsel, appeared and testified at an administrative hearing, as did a vocational expert. R. 46–81. In a decision dated July 29, 2019,

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity.

the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time between her alleged disability onset date and the date of that decision. R. 7–32. That decision became the final decision of the Commissioner when the Appeals Council declined review on June 5, 2020. R. 1–6.

**LEGAL STANDARD**

**Standard of Review**

When reviewing a case under the Social Security Act, a court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence

2

standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

Following review of the entire record on appeal from a denial of benefits, a court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). However, "[i]f a court determines that substantial evidence does not support the [Commissioner's] decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 175 (6th Cir. 1994).

**Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five**.** *Baker v. Barnhart*, 182 F. App'x 497, 499 (6th Cir. 2006); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step two.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not

3

have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC and age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

**ALJ DECISION AND APPELLATE ISSUES**

Plaintiff was 36 years old on her alleged disability onset date. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since that date. R. 13.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: mild carpel tunnel syndrome, mild degenerative disc disease of the lumbar spine, neuropathy,

anemia, angina, gastroesophageal reflux disease, hiatal hernia, stomach ulcer, nerve damage to the right hand, historical diagnosis of fibromyalgia, bipolar disorder, anxiety disorder, post-traumatic stress disorder, and substance abuse disorder. R. 13–19.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 19–20.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional exertional and non-exertional limitations. R. 20–23. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a manager and fast food worker. R. 23–24.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 50,000 jobs as a garment sorter, 100,000 jobs as a merchandise marker, and 35,000 jobs as a warehouse checker— could be performed by an individual with Plaintiff's vocational profile and RFC. R. 24–25. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 31, 2013, Plaintiff's alleged disability onset date, through the date of the decision. R. 25.

Plaintiff disagrees with the ALJ's findings at steps four and five, and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Statement of Errors,* ECF No. 12. The Commissioner takes the position that the decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Memorandum in Opposition,* ECF No. 13.

**DISCUSSION**

**Evaluation of Medical Opinions**

Plaintiff first contends that the ALJ improperly evaluated the opinion of her treating psychiatrist, Linda Griffin, M.D.

An ALJ must consider all medical opinions in evaluating a claim for disability benefits. 20 C.F.R. §§ 404.1527(c), 416.927(c). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

An ALJ ordinarily gives great deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Blakley,* 581 F.3d at 408. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

However, if the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ

> must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

6

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Furthermore, the Commissioner must "always give good reasons in [the Commissioner's] notice of determination or decision for the weight [the Commissioner] give[s] your treating source's opinion."  20 C.F.R. §§ 404.1527(c)(2),  416.927(c)(2).  Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550  (6th Cir. 2010) (internal quotation omitted).  The United States Court of Appeals for the Sixth Circuit has stressed the importance of this requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.  *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45.  Thus, the requirement  that the ALJ give good reasons for the weight accorded a treating physician's opinion is "particularly important when the treating physician has diagnosed the claimant as disabled."  *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 Fed. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). However, there is no requirement that the ALJ "expressly" consider each of the *Wilson* factors within the written decision.  *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (citing 20 C.F.R. § 404.1527(c)(2)).

Moreover, it is the Commissioner who is charged with the obligation to decide certain issues, such as a claimant's RFC.  20 C.F.R. §§ 404.1527(d), 416.927(d).  Although an ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special

significance. 20 C.F.R. §§ 404.1527(d), 416.927(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Plaintiff has undergone mental health medical management and counseling at Consolidated Care since September 2016 for treatment of severe major depressive disorder, post traumatic stress disorder, and borderline personality disorder. R. 628, 658–791, 852–56. In February 2019, a mental medical source statement approved by Dr. Griffith indicated that Plaintiff reported feeling "good" at her last appointment. R. 628. Plaintiff's prescribed medication consisted of 100 mg of Zoloft, daily. *Id*. She was described as "overinclusive, requir[ing] redirection, [having an] expansive affect, fair insight and judgment," and having made "medication changes without medical advice." *Id.* Her prognosis was characterized as "fair." *Id*. Plaintiff had a "history of" depressed mood, diminished interest in almost all activities, sleep disturbance, decreased energy, feelings of guilty or worthlessness, difficulty concentrating or thinking, thoughts of death or suicide, distrust and suspiciousness of others, instability of interpersonal relationships, and easy fatigue. R. 629. In an assessment of Plaintiff's ability to perform work-related activities, Plaintiff was characterized as "seriously limited" in her ability to sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, complete a normal workday and workweek without interruptions from psychologically based symptoms, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, deal with normal work stress, set realistic goals or make plans independently of others, and deal with the stress of semiskilled and skilled work. R. 630–31. These limitations were explained by a reported "history of job loss due to poor focus. She can have rapidly shifting

moods, intense anger and unstable interpersonal relationships as part of her borderline personality disorder." R. 631. Plaintiff would find stressful working with other people, dealing with the pubic (strangers), dealing with supervisors, being criticized by supervisors, getting to work regularly, remaining at work for a full day, and fear of failure at work. R.632. Finally, the assessment indicated that Plaintiff's impairments would cause her to be absent from work more than four days per month. *Id*.

Mark Hammerly, Ph.D., consultatively examined Plaintiff in May 2017 at the request of the state agency. R. 401–09. On clinical examination, Plaintiff's thought processes appeared to be coherent, goal-directed, and logical; her mood seemed downcast and her affect was constricted. R. 405. There were no motor manifestations of anxiety, nor was there evidence of paranoia, hallucinations, delusions, obsessive-compulsive behavior, dissociative experiences, recurrent or intrusive recollections of a traumatic event, or other clinically significant somatic concerns. R. 405–06. Plaintiff was alert and oriented; her mental control, concentration, and memory were grossly intact. R. 406. Testing on the WAIS-IV similarities subtest was interpreted as between the low average and borderline ranges. *Id*. Dr. Hammerly diagnosed unspecified bipolar and related disorder and adjustment disorder with depressed mood, chronic. R. 407. He characterized Plaintiff's prognosis as "fair." R. 408. "If the claimant follows a prescribed medical, psychological, or other regimen, symptoms have a solid chance of remission." *Id*. Her memory and comprehension were grossly normal; she "should be able to understand and apply instructions in an employment setting at a mostly average level." *Id*. She manifested "no real problems in tasks requiring significant concentration, persistence, and pace." R. 409. Her mood symptoms "would affect her interaction with supervisors and coworkers in a negative manner, and would make it difficult to sustain employment dealing with the public." *Id*. She would have

difficulty responding to ordinary workplace pressures, and would have a "significant decrease in coping ability, efficiency, and adaptive functioning in the face of a changing work environment." *Id*.

Robyn Murry-Hoffman, Ph.D., reviewed the record for the state agency in May 2017 and indicated that the record established depressive, bipolar, or related disorders, but that Plaintiff was only mildly impaired in her ability to understand, remember, or apply information; she was moderately impaired in her ability to interact with others, concentrate, persist, or maintain pace, and adapt or manage herself. R. 91. According to this psychologist, Plaintiff was not significantly limited in her ability to carry out very short, simple and detailed instructions, to perform activities within a schedule, to maintain regular attendance and be punctual within customary tolerances, to sustain an ordinary routine without special supervision, and to make simple work-related decisions, to ask simple questions or request assistance, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others.. R. 96–87. She was moderately limited in her ability to maintain attention and concentration for extended periods, to work in coordination with or in proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 96. According to Dr. Murry-Hoffman, Plaintiff "is able to perform simple to moderately complex, but routine tasks in an environment with few changes and relaxed production quotas. An increase in stress and demand will lead to decrease in production." *Id*.

Finally, the psychologist characterized Plaintiff as "[m]arkedly limited" in her ability to interact appropriately with the general public: she was "unable to interact with general public due to irritability, unable to mediate or negotiate with no over the shoulder supervision." R. 97.

In October 2017, Cynthia Waggoner, Psy.D., also reviewed the record for the state agency and indicated that the record documents depressive, bipolar and related disorders, substance addiction disorders (drugs), and anxiety and obsessive-compulsive disorders. R. 131. Dr. Waggoner concurred with Dr. Murry-Hoffman's assessments. R. 131, 135–137, 152–57.

In his decision, the ALJ summarized these medical reports and opinions and expressly noted the standards governing the opinions of treating medical sources. R. 15–17. However, the ALJ gave "great weight" to the opinions of Drs. Hammerly, Murry-Hoffman, and Waggoner, and only "partial weight" to those of Dr. Griffith. As to Dr. Griffith's opinions, the ALJ reasoned:

> First, the undersigned recognizes the treating relationship between Dr. Griffith and the claimant (14F/2). Second, the undersigned agrees with much of the assessment of Dr. Griffith, as it is congruent with the treatment notes and the assessments of Dr. Hammerly and Dr. Murry-Hoffman and Dr. Waggoner. For instance, the limitations in work place stressors is congruent with the opinions of Dr. Hammerly (4F/8-9) and Dr. Waggoner (7A, 8A/13). However, Dr. Griffith's estimate that the claimant would likely miss work "more than four days per month" and that he [sic] would need to take unscheduled breaks throughout any given workday is speculative at best and lacking any support in the medical record. Those conclusions are rejected as unsubstantiated by objective medical evidence or clinical findings.

R. 17–18. Accordingly, the ALJ found that Plaintiff

> experiences "mild" limitation in her ability to understand, remember, or apply information. She experiences "moderate" limitation in her ability to interact with others, and in his ability to concentrate, persist, or maintain pace, and in her ability to adapt and manage herself. The undersigned believes this interpretation as reasonable based upon the record.

R. 18. In determining Plaintiff's RFC from a mental standpoint, the ALJ found that Plaintiff

> can perform routine tasks, but not at a production rate pace and without strict production quotas. She can have occasional interaction with supervisors and coworkers but no interaction with the general public. She can tolerate occasional changes to a routine work setting defined as 1–2 per week.

R. 21–22.

Plaintiff characterizes Dr. Griffith's opinion as "preclud[ing] …full-time employment," and complains that the ALJ erred in assigning only partial weight to that opinion as merely "speculative and lacking any medical support." *Plaintiff's Statement of Errors*, ECF No. 12, PageID# 943. Plaintiff is wrong on both counts. It is not at all clear that Dr. Griffith's medical source statement is entirely work-preclusive; moreover, the ALJ's characterization of the treating psychiatrist's opinion as speculative and lacking medical support related only to Dr. Griffith's opinion that Plaintiff would likely miss work more than four days per month as a result of her mental impairments.

Plaintiff also complains that the ALJ failed to provide the detailed discussion of Dr. Griffith's opinions as required by the regulations, 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and *Wilson*, 378 F.3d at 544. *Plaintiff's Statement of Errors*, ECF No. 12, PageID# 944–45. To the contrary, the ALJ expressly noted Dr. Griffith's specialization as a psychiatrist, the length of her treatment relationship with Plaintiff, the supportability of her opinion, and the consistency of her opinion with the record as a whole, including the opinions of the consulting and reviewing mental health experts. It was only Dr. Griffith's opinion that Plaintiff would like miss work more than four days per month that the ALJ rejected. Indeed, there is no evidence in the record to that effect.

In short, the ALJ carefully considered the relevant medical opinions and evaluated those opinions by the appropriate standards. There is substantial evidence in support of the ALJ's findings in this regard, and Plaintiff's contention to the contrary is without merit.

**Vocational Testimony and the RFC**

Plaintiff also contends that the ALJ posed an incorrect hypothetical to the vocation expert and therefore erred in relying on the testimony of that expert. *Plaintiff's Statement of Errors*, ECF No. 12, PageID# 946–950.

Plaintiff's argument in this regard essentially challenges the RFC found by the ALJ. An ALJ does not err in relying on the testimony of a vocational expert so long as the hypothetical question posed to the vocational expert "accurately portray[s] a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). "Hypothetical questions, however, need only incorporate those limitations which the [ALJ] has accepted as credible." *Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 865 (6th Cir. 2011) (citing *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

The ALJ found that Plaintiff

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) subject to the following limitations: (1) permitted to alternate between sitting and standing every 30-minutes while at the work station; (2) frequently handle, finger and feel with the right upper extremity; (3) occasionally climb ladders, ropes and scaffolds; (4) frequently climb ramps and stairs, stoop, kneel, crouch, and crawl; (5) can perform routine tasks, but not at a production-rate pace and without strict production quotas; (6) occasional interaction with supervisors and coworkers, but no interaction with the general public; and (7) can tolerate occasional changes to a routine work setting defined as 1-2 per week.

R. 20. Asked to consider a hypothetical individual with Plaintiff's vocational profile and this RFC, the vocational expert testified that such an individual could perform work that exists in significant numbers, including the jobs that the ALJ identified in his decision. R. 75–76. Asked to consider a hypothetical individual who is required to take two additional 15-minute breaks randomly throughout the day, or who is off task 15 percent of the day, or who is absent three days per month, the vocational expert testified that such an individual could not maintain

competitive work. R.77. Plaintiff argues that this is the hypothetical upon which the ALJ should have relied.

To the extent that this argument is based on the ALJ's rejection of Dr. Griffith's opinion on absenteeism, the Court has already rejected that argument. Plaintiff also bases this argument on her movement disorder, in combination with her other documented impairments.

The medical record reflects complaints of shaking to medical providers: "Patient has history of widespread head and arm jerking . . ., described as episodic, typically worsened with activity, but volitionally suppressible." R. 635. Some medical providers also observed shaking: "Rhythmic jerking present throughout, most prominent in head and lower extremities. However, jerking stopped when evaluating extra-ocular movements when lying and assessing HF and HE, as well as when evaluating rapid alternative movements." R. 639. "Neurologic examination is notable for prominent tremor throughout the body that is suppressible with concentration. . . . Overall, it does not appear this tremor has made any change to her daily activities. . . . and given that it remains suppressible with intention, it is likely psychogenic in nature." *Id*. "She was intermittently shaking, her head would nod and her legs would tap. When she was doing something like putting on her shoes, the shaking stopped." R. 866. In January 2018, Plaintiff reported that "her shaking has improved." R. 748. In April 2019, her mental health provider noted "no involuntary movements or tics." R. 853.

Rohn T. Kennington, M.D., performed a consultative physical examination of Plaintiff at the request of the state agency in April 2017. R. 392–98. Plaintiff complained of chronic mental health issues, chronic low back pain, and fibromyalgia, as a result of which she experiences intermittent numbness and tingling in her hands and feet. R. 392. Findings on clinical examination were, by and large, normal. R. 393. However, Dr. Kennington noted "a generalized

14

intention tremor." *Id*. He diagnosed chronic mental health issues consisting of a combination of bipolar affective disorder/anxiety/PTSD, history of fibromyalgia with no objective clinical exam findings, "intention tremor etiology uncertain," chronic back pain, and nicotine addiction. R. 394. According to Dr. Kennington, Plaintiff could perform light lifting, carrying, pushing, and pulling; "[s]itting, standing, and walking would need to be limited to periods of time no more than one hour at a time with adequate periods allowed for rest and change of position considering her chronic back issues." *Id.*

Plaintiff testified at the April 2019 administrative hearing that she "started shaking" a couple years before the hearing. R. 59. "And I shake all the time. And if I reach up, like I'm reaching out to get something, I'll start shaking real bad. If I bend down, I start shaking real bad." R. 61. "And when I walk up and down stairs, I really start shaking real bad. . . . . And it's a jolting type of shake." R. 62. "I shake a lot sometimes. It affects my speech, like I stall when I talk. I don't know if it's because of the shake or whatever. They can't seem to find out what the shake's about." R. 64. She can lift a gallon of milk, but "as I'm raising it up, I shake." R. 66. "I used to get the shaking like once every couple of months or something like that when it first started out a couple of years ago. But now the shaking is every day." R. 67.

The ALJ considered Plaintiff's allegations of movement disorder, and observed:

> The undersigned notes that during the hearing, the claimant would constantly shake, but when answering a question, if she got consumed in her answer, the shaking would stop. It would restart once the claimant realized she was not shaking.

R. 14. The ALJ found that, to the extent that Plaintiff's subjective complaints would suggest an RFC more limited than that found by the ALJ, those complaints were not fully supported or consistent with the medical file. R. 23.

An administrative law judge is not required to accept a claimant's subjective complaints,

but may instead properly consider the credibility of a claimant.  *Infantado v. Astrue*, 263 F.

App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Commissioner of Soc. Sec.,* 127 F.3d 525, 531

(6th Cir. 1997)).  Because the administrative law judge has the opportunity to observe a witness'

demeanor while testifying, his credibility determinations are accorded great weight and

deference.  *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001).  If the administrative law judge's

credibility determinations are explained and enjoy substantial support in the record, the Court is

without authority to revisit those determinations.  *Sullenger v. Comm'r of Soc. Sec.*, 255 F.

App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating

that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of

credibility" (citation omitted)).  *See Beavers v. Secretary of Health, Educ. and Welfare,* 577 F.2d

383, 386-87 (6th Cir. 1978).  *See also Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994).   Here, the

ALJ carefully considered the totality of the evidence, applied the proper standards, and clearly

explained his credibility finding. Under these circumstances, this Court is without authority to

disturb that finding.

Finally, Plaintiff contends that her impairments, including a movement disorder, render

her disabled:

> It is predictable and essential to acknowledge the fact that Ms. Theis has no
> control over her movement disorder or its frequency. It is also further expected
> that when Ms. Theis' tremors occur, which is on a daily basis, her extremity
> movements become impaired and uncontrollable. This is likely to amount to poor
> performance and off-task tendencies. In the event that Ms. Theis secures any form
> of employment, it is likely that additional breaks and absences would be essential
> to cope with her ongoing conditions. With that being said, it is apparent and
> highly probable that Ms. Theis would unintentionally be off-task in excess of 15%
> of a workday and require more than one absence per month.

*Plaintiff's Statement of Errors*, ECF No. 12, PageID# 949–50. This contention overlooks the fact

that the record contains no evidence that Plaintiff's impairments require that she be off-task 15%

of the workday or that she take two additional breaks randomly throughout the day. To suggest otherwise is to engage in rank speculation that is inconsistent with the evidence.

**CONCLUSION**

For all these reasons, it is **RECOMMENDED** that the Commissioner's final decision be affirmed and that final judgment be entered pursuant to Sentence 4 of 42 U.S.C. § 405(g).


If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation.  See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).


Date:  July 23, 2021                              *s/Norah McCann King*
                                      NORAH McCANN KING
                                      UNITED STATES MAGISTRATE JUDGE